(Schuler *v.* The Northern Liberties and Penn Township Rail Road Co.)
for the non-production of the books at the time of the trial:
and as a ground of satisfying the Court, the affidavits offered
are too late. They would, moreover, even if offered at the
trial, have been inadmissible. They are *ex parte*, and without
opportunity of cross-examination. If the plaintiff himself was
a witness to any fact, (and I do not think he is, except as to
one which in its nature can be known only to himself, and
where he might be admissible *ex necessitate rei*,) he should be
produced in person at the trial, and subjected to cross-examina-
tion.

---

## SCHULER *against* THE NORTHERN LIBERTIES AND PENN TOWNSHIP RAIL ROAD COMPANY.

1. Proceedings on the assessment of damages in the case of land taken by
a rail-road company, under the authority of an act of assembly, may be
removed into the Supreme Court by *certiorari.*
2. Where an act of assembly directed, that if the parties could not agree
upon the amount of damages, it should be lawful for the Court of Com-
mon Pleas to award a venire, &c., and on the report of the jury and
final judgment thereon, and on the payment of the amount of damages
to the owner of the land, or if he should refuse to receive it, or be in-
capable, &c. then, on payment of the money into Court, the company
should become seized of the same estate, &c. as the owner had, it was

(Schuler *v.* The Northern Liberties and Penn Township Rail Road Co.)
*held,* that after such judgment and payment of money into Court, &c.,
the company had a right to enter upon the land in respect to which
damages were awarded, although a *certiorari* had issued from the Su-
preme Court to remove the proceedings, and the proceedings were there
depending; and that they were not to be considered as trespassers *ab
initio,* on account of any excess.

THIS was an action of trespass *quare clausum fregit,* &c.
brought in this Court by John C. Schuler against the Northern
Liberties and Penn Township Rail Road Company, its officers,
agents, &c.

The case was tried before Sergeant, J., at a Court of Nisi
Prius held at Philadelphia on the 15th of November, 1836, when
the plaintiff proved his title to the close upon which the alleged
entry was made, and gave in evidence the act of assembly for
the incorporation of the rail-road company, and other purposes,
passed on the 23d of April, 1829, the material part of which
was as follows.

"Sect. 15. *And be it further enacted by the authority afore-
said,* That whenever it shall be necessary for the president and
managers of the said company, to enter in, upon, and occupy
for the purpose of making said rail-road, any land upon which
the same may be located, or to make use of any stone, sand or
gravel, for constructing said road, if the owner or owners of the
said land, stone, sand or gravel, shall refuse to permit such en-
try, occupation or use, and the parties cannot agree upon the
compensation to be made for any injury or supposed injury, that
may be done to said land by such entry and occupation, or use
of materials, it shall and may be lawful for the parties to appoint
six suitable and disinterested persons, to estimate such damage,
[*556] who shall be under oath or affirmation, fairly *and im-
partially to estimate the same, and shall reside within
the county of Philadelphia; and the expenses incurred by the
said appraisers shall be defrayed by the said rail-road company :
but if the parties cannot agree upon such persons, or if the per-
sons so chosen shall not decide upon the matter, or if the owner
of such land shall refuse or neglect to join in such appointment,
within ten days after requisition for that purpose upon him made,
or if such owner shall be feme covert, or under age, non compos
mentis, or out of the county, then it shall be lawful for the
Court of Common Pleas of the County of Philadelphia, on ap-
plication of either party, and at the cost and charges of the said
corporation, to award a venire, directed to the sheriff of the
county, requiring him to summon a jury of disinterested men,
to view and examine and survey the said lands or materials to
be taken, as the case may be, and estimate the injury or damage
if any, that in their apprehension would be sustained as aforesaid,

(Schuler *v.* The Northern Liberties and Penn Township Rail Road Co.)

by reason of said rail-road, and report the same, under their oaths or affirmations, to the said Court; which report being confirmed by the said Court, judgment shall be entered thereon, and the said sheriff and jurors shall be entitled to the like fees for their services as are allowed by law in other cases of special juries, to be paid by said company; and it shall be the duty of all appraisers and jurors, as the case may be, in estimating such injury or damage, to take into consideration the advantage that will be derived to the owner or owners of the said lands from the said rail-road: Provided, That upon the coming in of such report or inquisition, and confirmation thereof, and final judgment thereupon, and the said company paying to such owner the sum in such report or judgment specified, in full compensation for said lands, or for the injury sustained as aforesaid, or if the said owners should be absent or unwilling to receive the same, or be otherwise incapacitated from the same, or any doubt should exist of the proper person to receive the same, then, upon the said company paying the same into Court, to be disposed of as they may direct, the said company shall become seized of the same estate in the said lands, which the owner held in the same; and they, and all who act under them, shall be acquitted and freed from all responsibility for and on account of such injury; Provided, That the payment of damages aforesaid, for lands through which said road may be laid, or from which any stone, sand or gravel for constructing said road, shall be made before the said company, or any other person under their direction or in their employ shall be authorised to enter upon and break ground in the premises, or use any such stone, sand or gravel, except for the purpose of surveying or laying out said road, unless the consent of the owner of such land be first obtained: *Provided,* That if the said company shall desire to erect wharves, storehouses, or the like buildings for the accommodation of trade, they shall obtain the land necessary therefor by agreement of the owner only.

*Sect. 19. *And be it further enacted by the authority aforesaid,* That if the said company shall not construct [*557] the rail-road authorised by this act, so far, at least, as from the river Delaware to the junction with the said Pennsylvania rail-road to Columbia, [within the term of five years from the passing of this act,] or if after the completion of said rail-road, the said company shall suffer the same to go to decay and be impassable for the term of two years, then this charter shall become null and void, except so far as to compel said company to make reparation for damages."

It appeared in evidence that pursuant to the provisions of this act, notice was given to the plaintiff by the solicitor of the com-

(Schuler *v.* The Northern Liberties and Penn Township Rail Road Co.)
pany on the 15th of June, 1833, to join in the appointment of
appraisers.   The plaintiff not choosing to join in this appoint-
ment, application was made by the company to the Court of
Common Pleas, who awarded a venire to obtain an assessment of
the damages.   On the 29th of July, 1833, the report of the jury
was filed, awarding to the plaintiff the sum of $1300 for a large
lot of ground and $100 for a small lot.   Exceptions to the report
were filed by the plaintiff on the 16th of August, 1833.   On the
26th of November following, the exceptions were argued and
dismissed, and the report confirmed.   On the same day the
amount awarded for damages was paid into Court by the com-
pany.   On the 28th of November a *certiorari* issued from the
Supreme Court with a special allocatur, to remove all the pro-
ceedings in the matter of the assessment of damages in this case.
The proceedings were brought into the Supreme Court on the
7th of December.   The entry of the defendants into the plaintiff's
premises for the purpose of making the rail-road, which was the
trespass complained of in this action, took place on the 24th of
December.   The plaintiff's stable was partly taken down, and
his fences removed.   The evidence as to the degree of force used
was contradictory.

The jury under the direction of the Court, returned a verdict
for the defendants.

A motion was made for a new trial; and a rule to show cause
having been granted—

Mr. *Keemlé* and Mr. *Randall* for the plaintiff, cited *Newlin*
v. *The Commonwealth*, (5 Binn. 26); *Grubb* v. *Fox*, (6 Binn.
461); *Gardiner* v. *Murray*, (4 Yeates, 560); *Case* v. *Shep-
herd*, (2 Johns. Cas. 27); 1 Bac. Abr. tit. Certiorari, letter G.
p. 507.

Mr. *Goodman*, contra, cited, *Anon.* (4 Dall. 214); *Entwistle*
v. *Shepherd*, (2 Vern. Rep. 78): *Commonwealth* v. *Beaumont*,
(4 Rawle, 366); *Bonaparte* v. *Camden and Amboy Rail Road
Co.* (1 Baldwin, 205).

[*558]    *The opinion of the Court was delivered by
          ROGERS, J.—The fifteenth section of the act of the
23d March, 1829, which gives authority to the president and
managers of the rail-road company, to enter and occupy the land
on which the rail-road may be located, provides, among other
matters, that upon confirmation and final judgment on the report,
and inquisition made in pursuance of the act, upon paying into
Court the sum awarded, where the owner shall refuse to receive

(Schuler v. The Northern Liberties and Penn Township Rail Road Co.)
it, the company shall become seized of the same estate in the
land which the owner held.  After confirmation of the report,
by the Court of Common Pleas, and final judgment thereon, the
company (the owner having refused to accept it,) paid the sum
awarded by the inquest into Court; whereupon they became
seized of the same estate in the land which the owner held.  The
entry being lawful, the Court properly instructed the jury, that
if any resistance was made, they had a right to use force; and
further, that even if, after they had entered, they misdemeaned
themselves, or exceeded their authority, they were not tres-
passers; the doctrine of trespassers ab.initio not applying where
the entry is made on land which is your own.  Where the direc-
tions of the act are pursued, the company is acquitted from all
responsibility for any injury which may be done.  The legisla-
ture, while they guard the rights of the owner of the land through
which the road passes, have thought proper to avoid, as far as
practicable, any vexatious or unnecessary delay—a consideration
of great importance in a work of this description, and which
they would seem to have had specially in view in the charter
granted to the company : and this, if not conceded, has been but
faintly denied.  The plaintiff in error contends, that, as the pro-
ceedings were removed by certiorari, of which the company had
notice before entry, the action of trespass will well lie.  On this
exception, they mainly depend.  We have no doubt of the power
to remove the proceedings on certiorari: for the jurisdiction of
the Supreme Court (as has been repeatedly ruled,) to review the
proceedings of all inferior tribunals, cannot be taken away,
except by express words, or necessary implication.  Although
this power must be conceded, still the question recurs, was the
certiorari a supersedeas?  In one sense, it certainly was; for
after a certiorari, all subsequent proceedings by the Court below,
on the record, are erroneous.  If any thing had remained for
the Court of Common Pleas to do, it would be error in them to
proceed, after the allowance of the act; but after the payment
of the money into Court, no further action by them was required.
It becomes, therefore, a question of legislative intention; and
from the act, and the evident design of its framers, it is clear,
that in the intermediate time between the payment of the money
into Court, and the allowance of the writ, the company were
seized of the land, and of course had a right of entry.  The
question then comes to this; will *the allowance of the [*559]
writ divest the seisin, and reinvest the title of the
former owner?  We are of opinion, that nothing can have that
effect, short of a reversal of the proceedings.  Whether trespass
will lie, in that event, it is needless to determine, as we are
clearly of the opinion, that the action cannot be sustained, while

the· *certiorari* is pending and undetermined.  It is said, that if the judgment of the Court of Common Pleas is reversed, the plaintiff may be without remedy.  If this were so, as it is a case of improvident legislation, within the constitutional limits of the legislature, we cannot control it, as that would be an assumption of legislative authority.  But the plaintiff is not without redress ; for granting that trespass will not lie, after reversal, yet there is nothing to prevent a new application to the Court for an inquest.  The inquest would be able to do justice to the owner, by giving him the value of the land, at the time of the entry, with interest until the finding of the second inquest.

Judgment affirmed.

Cited by Counsel, 8 Watts & Sergeant, 461 ; 11 Harris, 36.